WARDEN et ux. v. RICHARDSON et ux.

No. 33766.   Sept. 19, 1950.

Rehearing Denied Oct. 17, 1950.

*223 P. 2d 338.*

C. W. Clift, of Oklahoma City, and Logan Stephenson, F. C. Swindell, O. C. Lassiter, and Earl Truesdell, all of Tulsa, for plaintiffs in error.

Sam S. Gill, of Oklahoma City, for defendants in error.

O'NEAL, J. This is an appeal from a judgment for defendant in an action for an accounting. Claude F. Warden and Pearl D. Warden, herein referred to as plaintiffs, commenced this action in the district court of Oklahoma county against E. L. Richardson and Emma R. Richardson. In their amended petition plaintiffs alleged in substance that on or about July 15, 1943, plaintiffs entered into an oral profit sharing agreement with defendants whereby plaintiffs were to join with defendants in the management and operation of a business known as the Pan Tex Cleaning Company of Oklahoma City; that defendants were to furnish the place of business and equipment and plaintiffs for their services were to receive one-half of the net profits of the business, and defendants were to receive the other one-half of the net profits; that pursuant to said agreement plaintiffs did, on July 15, 1943, join with defendants in the operation of said business, and continued therein until about February 1, 1945, at which time said business relations were terminated by mutual consent; that plaintiffs performed their part of said agreement, and that said business was that of cleaning, dyeing and washing; that defendants handled all the money of said business and plaintiffs managed the work and operation of the plant; that when said agreement was terminated defendants promised to account to plaintiffs for their part of the net profits, but have failed to do so; that defendants collected large sums of money due said firm and refused to pay or account to plaintiffs for their share of the profits; that within three months next before the commencement of this action, plaintiffs discovered that defendants drew the sum of $50 per week during said period in violation of said agreement and unknown to plaintiffs; that defendants did not account to plaintiffs for said sum or any part thereof, and that defendants collected other money due the firm and failed, refused and neglected to account to plaintiffs for their part thereof.

Plaintiffs further alleged that upon a full and true accounting there would be large sums of money, approximately $3,500, due plaintiffs. Their prayer was that the court decree the relationship of the parties to be that of a partnership, or a relationship in the nature of a partnership, and that defendants be required to account and settle, and that they have judgment for the balance due them and for costs, and for other proper equitable relief.

Defendants answered the amended petition by general denial and further alleged that Emma R. Richardson was the owner of the business referred to in plaintiffs' amended petition, and that defendant E. L. Richardson, her husband, was the manager of said busi-

ness; defendants then admitted that E. L. Richardson made an oral contract of employment with plaintiffs which continued from about the middle of July, 1943, to about January 1, 1945, by which plaintiffs were to work in said cleaning and pressing establishment and to receive as their compensation one-half of the net profits, after deducting the sum of $50 per week as management for E. L. Richardson in lieu of deductions for taxes, depreciation, insurance, and other general overhead items, the exact amounts of which could not be ascertained from week to week; that plaintiffs worked during said period and that repeatedly and at short intervals, ranking from one week to thirty days, settlements were made and payments were made to and received by plaintiffs, covering any and all sums due, or claimed to be due, to the date of said settlements, and that by reason thereof, plaintiffs have been paid and have received and settled for all sums due or claimed to be due them, or either of them; that defendant Emma R. Richardson was not engaged in the operation of said business, but her husband, E. L. Richardson, was, and she relied on him for the management and conduct of said business.

Defendants further alleged:

"The defendants further state that said defendant E. L. Richardson was stricken with paralysis during the fall of 1944 and thereafter confined to his bed at his home, becoming progressively weaker physically, until during the summer or early fall of 1945 he lost all ability to speak or write, and since said time and now is confined wholly to his bed unable to talk or write or give testimony in person or by deposition under oath, or otherwise to defend himself in this suit.

"That after defendant's stroke, as aforesaid, the plaintiffs continued their employment in said business, keeping the books and accounts themselves, and making additional repeated accountings and settlements with the defendants at their home until on and between the first and tenth day of January, 1945, when the defendant Emma R. Richardson sold her business and the plaintiffs theretofore and thereafter making complete and full settlement, and receiving full and complete payment of any and all sums due or claimed to be due them or either of them, said plaintiffs at all times knowing the details concerning any and all withdrawals by E. L. Richardson."

Defendants further pleaded laches, estoppel and the two-three-and five-year statutes of limitation.

Plaintiffs filed no reply to the answer of defendants.

The cause came on for trial February 12, 1948, before Honorable A. P. Van Meter, district judge. The journal entry of judgment recites that a jury was waived and the parties agreed that the case may be tried to the court.

At the opening of the trial defendants objected to the introduction of any evidence for the reason that the action is an effort to establish a fictitious partnership without any allegations or showing that the law relating to fictitious partnerships had been met and complied with. Thereupon the parties stipulated that there had been no compliance with the statute relative to fictitious partnerships. The objection was then overruled and plaintiffs produced their evidence and rested. A demurrer was interposed to plaintiffs' evidence and the demurrer was sustained. Judgment was entered for defendants, and plaintiffs appeal.

It is contended that the court erred in sustaining defendants' demurrer to plaintiffs' evidence. Under that proposition plaintiffs cite the rule that the test to be applied to a demurrer to the evidence is that all the facts which the evidence in the slightest degree tends to prove and all the inferences and conclusions which may be reasonably and logically drawn therefrom are admitted, and that in passing upon a demurrer to the evidence a court cannot weigh conflicting evidence but must

treat as withdrawn the evidence which is most favorable to the demurrant. Oklahoma Hospital v. Brown, 87 Okla. 46, 208 P. 785; Provident Life & Accident Insurance Co. of Chattanooga, Tenn., v. Henson, 187 Okla. 150, 101 P. 2d 838.

The rule, in an action for an accounting, appears to be that where the right to an accounting is put in issue by the answer, the burden is upon plaintiff to prove that he is entitled to the relief sought, and if he fails to do so the bill will be dismissed. The plaintiff must prove that there is a balance due him. 1 C.J.S. 677-678.

Plaintiff is not entitled to an accounting as of course, and where answer called for is given and it does not admit the allegations of the complaint, and there is no consent to the entry of a decree, there must first be a preliminary hearing to determine plaintiff's right to an accounting and to dispose of all matters in bar thereof before a decree to account is entered. 1 C.J.S. 680. If in such preliminary hearing plaintiff establishes his right to an accounting, then the court enters an interlocutory decree for an accounting; that is, the court then enters an interlocutory decree requiring defendant to account and to put on such proof which he may contend shows that there is nothing due plaintiff. If in such preliminary hearing plaintiff fails to show his right to an accounting the bill will ordinarily be dismissed. But if plaintiff does establish such right, the burden then shifts to defendant to account, and then, if from all the evidence, it appears there is any sum certain due the plaintiff, judgment will be entered for that sum in favor of plaintiff and against the defendant.

Plaintiffs do not contend that the evidence is sufficient to prove or show any definite sum due plaintiffs for which the court could enter judgment. Plaintiffs do contend that their evidence, together with all the inferences and conclusions that may be reasonably drawn therefrom, shows there is some money due plaintiffs on account of the transaction between the parties, and that the burden is thereby cast upon defendants to account.

It may be noted that the pleadings, that is, the petition and answer, do not differ materially as to the nature and duration of the contract or agreement between the parties. It commenced about July 15, 1943, and terminated about February 1, 1945, according to the petition, and commenced about July 15, 1943, and terminated about January 1 to 10, 1945, according to the answer of defendants. There is one material difference, in that the plaintiffs alleged the agreement was that defendants would furnish the place of business and equipment; that the parties, both plaintiffs and defendants, would join in the operation of the business, and that as a consideration therefor plaintiffs were to receive one-half of the net profits. While defendants alleged that defendant Emma R. Richardson was the owner of the cleaning business referred to in plaintiffs' petition and defendant E. L. Richardson, her husband, was the manager thereof; that the defendant E. L. Richardson made the oral agreement with plaintiffs, by the terms of which plaintiffs were to work in said cleaning and pressing establishment, and

"Receive as their compensation one-half of the net profits, after deducting the sum of $50.00 per week as manager for E. L. Richardson, in lieu of deductions for taxes, depreciation, insurance and other general overhead items, the exact amount of which could not be definitely ascertained from week to week."

There is evidence to the effect that E. L. Richardson opened a checking account in the Tradesmens National Bank under the name of Pan Tex Cleaning Company under date of November 5, 1942. (Plaintiffs assert in their brief that the date thereof was November 5, 1943, but the bank records introduced

in evidence show clearly that the date said account was opened was November 5, 1942, and that the initial deposit was $500.) The evidence does not show what the balance, if any, in the account was on July 15, 1943. The account was closed February 5, 1945.

Plaintiff Claude F. Warden testified, in substance, that shortly before July 15, 1943, he and his wife, plaintiff Pearl D. Warden, entered into an oral agreement with defendant E. L. Richardson, whereby plaintiffs were to go to work and help in the plant and receive "Fifty-fifty" the profits of the business; that pursuant thereto plaintiffs did go to work in the plant and continued so to do until about the 1st of February, 1945; that a short time after the agreement was entered into he had a conversation with the defendant Emma R. Richardson, in which he told her what the agreement with E. L. Richardson was, and that she stated that it was agreeable to her. He testified further that in conducting the affairs of the business, such as hiring and discharging help, he and E. L. Richardson usually consulted each other, and would usually mutually agree about such matters, but that defendant E. L. Richardson did really have the last word in such matters. He testified that defendant E. L. Richardson kept all the books, such as were kept, down to about December 26, 1944, at which time defendant E. L. Richardson suffered a stroke of paralysis after which he was bedfast and could not attend to business, and that plaintiffs looked after everything, including the books, until the business was sold. He testified further that defendant E. L. Richardson had charge of all the receipts of the business and paid all the employees; that they usually had about ten employees, not including plaintiffs. He testified further that Richardson would usually figure out how much the gross business for the week was and what the expenses were, and would then show the amount, or state the amount, that was to be di-

vided; that Richardson would also have slips where he figured these matters up and would then take the money out of the cash drawer and pay all the employees in cash; that he never paid any of the employees by check, and that he always paid plaintiffs in cash each Saturday night, and that he never paid plaintiffs by check, and no Social Security tax was figured or withheld on plaintiffs' part of the receipts. He testified that matters went along that way until about December 26, 1944, when defendant E. L. Richardson suffered the stroke of paralysis, and that thereafter until the business was sold (about February 1, 1945) plaintiffs took over the matter of handling the receipts, paying the employees, etc., and that that was done in the same way that Richardson had done before he became ill; that during the time from December 26, 1944, to about February 1, 1945, plaintiffs, after paying all the employees, would retain $75 per week for their services and turn the balance of the weekly cash receipts to defendant E. L. Richardson. He then testified that he did not learn that plaintiffs might have additional money due them until about January 1, 1947, when an investigator from the Federal Income Tax Department wrote him a letter requesting an interview; that he learned from the investigator that plaintiffs' income was lower than was that of the defendant E. L. Richardson; that apparently the income tax return of the Richardsons showed that their income (apparently for the year 1944) was approximately $2,300 more than plaintiffs' income tax return showed their income to be. He testified further that what he learned from said income tax returns, or the investigator, was the basis of this suit. He testified that if plaintiffs had earned that much more money, they had not received it.

He testified further, however, that he kept no books and no record of what plaintiffs' actual weekly income was;

that he made up his own income tax return, or had it made by an auditor, on an estimate that plaintiffs' average weekly payments were $80; that he consulted defendant E. L. Richardson, and asked him about what his average weekly income had been and that Richardson told him that he thought it was about $75 per week; but that he and his wife had consulted each other and they decided that to be on the safe side, or "in the clear" they would and did estimate their weekly income from the cleaning establishment at $80. He testified that he knew that plaintiffs' weekly income varied considerably, and that for some weeks it would be as low as $45 and for other weeks it would be as high as $125.

He testified that he had no idea what amount, if any, Richardson had paid out toward taxes, insurance, etc. There was no evidence whatever as to how much, if anything, Richardson had paid out for other overhead items such as gas, lights, power, water, etc.

The testimony of plaintiff Pearl D. Warden was, in substance, the same as that of her husband, Claude F. Warden. She testified, however, that the arrangements were that defendant E. L. Richardson did open up the business each morning, and that plaintiffs were to come to work about 10 o'clock a. m., and that defendant E. L. Richardson would go home in the afternoon, and plaintiffs were to work until closing time, about 7 o'clock p. m.

From the record thus made, it appears certain that the relationship of the parties in said business was not that of a partnership. The trial court so held and the record sustains the holding. There was no evidence that plaintiffs were to share in the loss, if any, of the business. Plaintiffs were not entitled to an accounting on the theory of an ordinary partnership.

The principal question arises over the difference between the parties as to the terms of the agreement. If it be

found that the contention of the plaintiffs that they were to receive one-half of the net profits, without deducting anything for the services or salary of E. L. Richardson as manager, is true, it would appear reasonably certain that there is some money due plaintiffs. On the other hand, if it be found, as alleged by defendants, that plaintiffs were to receive one-half of the net profits after deducting $50 per week for E. L. Richardson as manager in lieu of deductions for taxes, depreciation, insurance and other general overhead items, then plaintiffs have wholly failed to prove anything due them.

Under the well established rule that, for the purpose of a demurrer to plaintiffs' evidence all the facts which the evidence most favorable to plaintiff, together with the inferences and conclusions which may be reasonably drawn therefrom tend to prove, are taken as true, and all conflicting evidence favorable to demurrant is considered as withdrawn, it must be said that the evidence as it stood when the demurrer thereto was presented and passed upon showed that the plaintiffs were entitled to one-half of the net profits of the business without deducting anything for the salary of E. L. Richardson as manager, in lieu of other expenses. The trial court should have overruled the demurrer of defendants to plaintiffs' evidence and then proceeded to take evidence, if any was offered by defendants, on the question of the terms of the contract referred to above, and should have then made findings of fact with reference thereto. If the issue on said question be found in favor of plaintiffs, then the interlocutory decree for accounting should have been entered. If that issue had been determined in favor of the defendant, the interlocutory decree for accounting should then have been denied and the bill dismissed.

The order and judgment of the trial court sustaining the demurrer to the evidence and dismissing the action is

reversed, and the cause is remanded, with directions to grant plaintiffs a new trial and to proceed in conformity with the views herein expressed.

ARNOLD, V.C.J., and CORN, GIBSON, LUTTRELL, and JOHNSON, JJ., concur.